421 So.2d 678 (1982)
Robert NEEDLE, Appellant,
v.
Ethel LOWENBERG, Appellee.
No. 82-359.
District Court of Appeal of Florida, Fourth District.
November 3, 1982.
Bennett S. Cohn, Lake Worth, for appellant.
Kirk Friedland of Altman, Colin & Friedland, Lake Worth, for appellee.
GLICKSTEIN, Judge.
In January, 1977, appellant was an experienced real estate broker in Palm Beach County, an officer of a company that issued title insurance policies, and engaged in buying and selling property for his own account. Appellee was a recently licensed real estate salesperson who had sold her home and needed a new residence. She also had been made aware of a condominium apartment available for purchase she believed was owned by Barry Rubin.
When she contacted Mr. Rubin on January 25th, he told her to see appellant. The following day she went to appellant's real *679 estate office and learned that appellant was the current owner of the apartment. She offered to pay appellant $1,500 for the apartment and to assume the existing mortgage; appellant accepted.
Appellant produced a duly executed warranty deed showing him as grantee and Mr. Rubin and his wife as grantors. At the trial of this cause, appellee testified appellant, at the forty minute conference on January 26th, directed his secretary to delete his name from the grantee section of the deed with correction fluid and to insert appellee's name in lieu thereof; he assured appellee this procedure was proper. But, more importantly, she testified that he told her he had clear title to the property and made a telephone call in her presence to initiate issuance of a title insurance policy for her protection.
At that time, the parties also signed an agreement wherein appellant, as assignor and in consideration of the $1,500 appellee paid him, agreed to five remunerative conditions: the payment of (1) all back maintenance and (2) mortgage payments, (3) a special assessment, (4) Mr. Rubin, and (5) documentary stamps and surtax on the deed. Appellee further testified that after she recorded the altered deed on January 28th, she unsuccessfully continued to query appellant about the title insurance. In 1978, she eventually learned a judgment against Mr. Rubin clouded her title and informed appellant of her discovery. Nothing, however, was done about the problem for two years, although appellee was able to use the apartment as collateral to negotiate two loans, notwithstanding the cloud on the title.
Finally, in 1980, appellee obtained a copy of the final judgment rendered in 1976 against Mr. Rubin and learned the holder was willing to accept $15,000 to release the property from the judgment; but later it sued to foreclose the judgment lien on her apartment. Thereupon appellee instituted the present third party action against appellant.
Since the judgment entered was adverse to appellee, she borrowed funds and paid the holder $15,000 to release the apartment from the judgment lien  the amount it was demanding immediately prior to the foreclosure sale. The trial court found appellant guilty of fraud, reestablished the copy of the unaltered deed, and declared the altered original deed void. It awarded appellee as damages the $15,000 paid to the judgment holder together with the expenses she incurred in borrowing to pay off the judgment, as well as attorney's fees, and ordered appellant execute and deliver to appellee a warranty deed to the apartment.
We affirm the final judgment because there was substantial competent evidence to support the trial court's finding of fraud. Appellant's defense was that a title insurance company told him the title was clear and he just parroted what he had been told. The trial judge's order recites that he chose not to believe appellant's testimony and we are unaware of any effort by appellant to implead the title insurance company as the responsible party. The trial judge obviously believed that any real estate broker reckless enough to alter a fully executed, delivered deed by changing the name of the grantee under these circumstances[1] would be equally reckless enough to represent the title to be free from defects (as appellee testified appellant had done) when it clearly was clouded by the 1976 judgment.
*680 Appellant makes much of the fact that Mr. Rubin's deposition was used at the trial for the purpose of introducing into evidence that Mr. Rubin told appellant of law suits and/or judgments against him when the title of the apartment was transferred to appellant. But we believe the evidence of fraud was sufficient without the deposition, for scienter exists when a representation is made without knowledge of its truth or falsity. See First National Bank of Stuart v. Jackson, 267 So.2d 697 (Fla. 4th DCA 1972). Nevertheless, we think it well to discuss briefly what occurred in this regard.
Mr. Rubin's deposition was duly noticed for April 3, 1981, the same day appellant's counsel wrote a letter informing appellee's counsel of his inability to attend. In the letter was a request that appellee's counsel make a copy of the deposition, if transcribed, for which payment would be made. Appellant's counsel, however, made no such request of the court reporter (the contrary would have been the expected procedure). Then appellee's counsel, on October 19, 1981, learned from Mr. Rubin, who had been served with a subpoena for the trial scheduled two days hence, that he was going to be out of the state. Thus, appellee's counsel hand-delivered a copy of the deposition to appellant's counsel and informed the latter of his intention to use it.
Thereafter appellant's counsel did not move to suppress the deposition. Instead, at the end of the first day of trial when appellee's counsel informed the trial court of his intent to introduce portions thereof the following morning, appellant's counsel directed an objection to the fact that Mr. Rubin was a resident of Florida. In his objection the following morning to quotations from the deposition, appellant's counsel stated, without making reference to any applicable Florida Rule of Civil Procedure, that he had not received notice of its transcription. It is unfortunate that Florida Rule of Civil Procedure 1.310(c) is ambiguous in reciting whose obligation it is to notify all parties of a request for transcription  counsel or the officer before whom the deposition is taken.[2] It is equally unfortunate that Florida Rule of Civil Procedure 1.330(d)(4) does not spell out whose errors compel the filing of a motion to suppress.[3] But we are of a mind that, pursuant to the latter rule, appellant's counsel was required to file a motion to suppress the deposition if he was going to rely on the absence of notice of transcription,[4] notwithstanding the inconsistency of such a stance and the request in his letter of April 3, 1981.
As to the award of attorney's fees, we affirm. The trial court expressly found in his order that appellant intended to deliver a warranty deed to appellee  which he did, albeit a nullity  and there is no question in our mind that appellee fully expected a warranty deed. Attorney's fees incurred by a grantee have been upheld when the grantor has breached a covenant of seisin. Williams v. Azar, 47 So.2d 624 (Fla. 1950); Nelson v. Growers Ford Tractor Co., 282 So.2d 664 (Fla. 4th DCA 1973). We see no reason why they should be denied when there is a breach of covenant against encumbrances; one that is implicit in this case and pled by appellee, who is entitled to be made whole. Appellant, therefore, should be accountable for all the damages he *681 caused by his reckless and irresponsible conduct.
ANSTEAD and HERSEY, JJ., concur.
NOTES
[1] As stated in 3A C.J.S. Alteration of Instruments § 70, at 332 (1973):

After execution and delivery of a sealed instrument or deed an alteration has no effect unless there has been a re-execution of the instrument in its altered form.
It was incumbent upon appellant, when he accepted the deed from his grantor, to pay the excise tax on deeds then required of purchasers by section 201.02, Florida Statutes (1975). In fact, the failure to pay the tax would have been a misdemeanor. § 201.17, Fla. Stat. (1976). Similarly, it was incumbent upon him to execute a separate deed to appellee, whose purchase from appellant imposed upon her the same statutory obligations arising from her purchase.
[2] Florida Rule of Civil Procedure 1.310(c) provides in part:

If requested by one of the parties, the testimony shall be transcribed at the initial cost of the requesting party and prompt notice of the request shall be given to all other parties.
(Emphasis supplied.)
The present corresponding federal rule, Federal Rule of Civil Procedure 30(c), does not include the emphasized part.
[3] Florida Rule of Civil Procedure 1.330(d)(4) provides:

As to Completion and Return. Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared, signed, certified or otherwise dealt with by the officer under Rules 1.310 and 1.320 are waived unless a motion to suppress the deposition or some part of it is made with reasonable promptness after the defect is, or with due diligence might have been, discovered.
[4] See Valdez v. United States, 326 F.2d 598 (9th Cir.1963).