**In re Louis S. ST. LAURENT, II, et al., Debtors.**

**Louis S. ST. LAURENT, II, Plaintiff–Appellant,**

v.

**William J. AMBROSE and Patty A. Ambrose, Defendants–Appellees.**

No. 91–5407.

United States Court of Appeals, Eleventh Circuit.

May 20, 1993.

Caption on Rehearing Corrected June 22, 1993.

Louis S. St. Laurent, II, Miami, FL, for plaintiff-appellant.

James W. Moore, Miami, FL, for defendants-appellees.

Before FAY, DUBINA and CARNES, Circuit Judges.

DUBINA, Circuit Judge:

The issue in this case is whether a punitive damage award arising from a state court finding of fraud is dischargeable in bankruptcy. The debtor, Louis S. St. Laurent ("St. Laurent"), appeals the district court's judgment affirming the bankruptcy court's determination that the punitive and compensatory portions of a state court judgment for fraud were nondischargeable debts under 11 U.S.C. § 523(a)(2)(A) and § 523(a)(4).[1] *In re St. Laurent*, 108 B.R. 805 (Bankr.S.D.Fla.1989). Because we affirm the bankruptcy court's determination of nondischargeability under § 523(a)(2)(A), and because that determination fully supports the judgment below, we find it unnecessary to review the bankruptcy court's conclusions under § 523(a)(4).

## I. *FACTS*

St. Laurent was the developer of Topsider Resort ("Topsider"), a condominium complex located in the Florida Keys. First Federal Savings and Loan Association of the Florida Keys ("First Federal") held the mortgage to Topsider. In 1982, St. Laurent sold time-share intervals to the individual appellees (the "Owners"). The purchase agreements evidenced St. Laurent's promise to convey title free and clear of any encumbrance by the time of closing. At closing, the deeds of conveyance reflected that First Federal's mortgage no longer encumbered the time-share intervals. No release, however, had been obtained. Instead of paying off the mortgage, St. Laurent diverted the Owners' purchase money consideration to his personal use.

Topsider defaulted, and First Federal filed a foreclosure action in state circuit

---

1. Title 11 U.S.C. § 523(a) provides in pertinent part that:

 (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

 (A) false pretenses, a false representation, or actual fraud ...;

 (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny....

court in Monroe County, Florida, naming St. Laurent and the Owners as defendants. The Owners filed a cross-claim against St. Laurent for fraud, claiming that St. Laurent pocketed the purchase money paid him rather than applying it to satisfy First Federal's mortgage as promised. The state court found St. Laurent liable for fraud.[2] *First Fed. Sav. & Loan Ass'n of the Fla. Keys v. Can–Am Investments, Inc.*, No. 84–20156–CA–09 (Monroe County Ct. Jan. 18, 1989) (hereinafter "State Court Judgment"). Specifically, the court found by the greater weight of the evidence that St. Laurent

> individually and as Trustee represented to the Defendant/Owners that they would obtain title to their individual unit weeks free and clear of [First Federal's] Mortgage when in fact Defendant, LOUIS S. ST. LAURENT II, individually and as Trustee, misdirected the consideration paid by each of the Defendant/Owners by converting these monies to his own use and did not use said funds to obtain releases from the subject mortgage.

*Id.* at 6. The court awarded $48,705.22 in compensatory damages and $50,000 in punitive damages.[3]

Thereafter, St. Laurent filed for Chapter 7 bankruptcy protection, listing as a dischargeable debt the $98,705.22 judgment against him. The Owners sought a determination in bankruptcy court of whether the judgment was exempt from discharge under §§ 523(a)(2)(A) and 523(a)(4). The bankruptcy court found that the state court judgment established that St. Laurent

> made fraudulent representations to the [Owners] by representing that [they] would obtain title to their time-share unit weeks free and clear of the first mortgage, when, in fact, [St. Laurent] misdirected the consideration paid by the

[Owners] by converting those monies to his own use and not to obtain releases from the subject mortgage.

*St. Laurent*, 108 B.R. at 806. It then applied collateral estoppel to conclude that the entire debt was the product of fraud and therefore nondischargeable under §§ 523(a)(2)(A) and (a)(4). *Id.* The district court affirmed. *In re St. Laurent*, No. 90–0223 (S.D.Fla. Mar. 20, 1991).

## II. *ANALYSIS*

 St. Laurent argues on appeal that the district court erred in affirming the bankruptcy court's application of collateral estoppel to the state court judgment. Alternatively, he claims that punitive damage judgments awarded for fraud are dischargeable as a matter of law under §§ 523(a)(2)(A) and 523(a)(4) of the Bankruptcy Code. Although this case has been reviewed on appeal by the district court, we review the bankruptcy court's findings as if this were an appeal from a trial in the district court. *In re Bennett*, 989 F.2d 788 (No. 91–1059, 5th Cir. April 19, 1993). We review the bankruptcy court's fact findings for clear error, *In re Patterson*, 967 F.2d 505, 508 (11th Cir.1992), and its conclusions of law *de novo*. *Id.*

### A. *Collateral Estoppel*

 Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a "full and fair opportunity" to litigate that issue in an earlier case. *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Collateral estoppel principles apply to dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). If

**2.** The court also found that St. Laurent had breached (1) the Owners' purchase agreements by failing to obtain releases of the mortgage, and (2) the agreements' warranty against encumbrances contained in the individual Owners' warranty deeds.

**3.** The Owners' cross-claim also named St. Laurent's real estate closing attorney as a defendant. Prior to trial, the Owners settled with the closing attorney for the full amount of their damages, minus attorney's fees. The $48,705.22 awarded in compensatory damages represents the Owners' costs for obtaining clear title to their individual unit intervals.

the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect. *In re Touchstone*, 149 B.R. 721, 725 (Bankr.S.D.Fla. 1993). Under Florida law, the following elements must be established before collateral estoppel may be invoked: (1) the issue at stake must be identical to the one decided in the prior litigation; (2) the issue must have been actually litigated in the prior proceeding; (3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case. *In re Yanks*, 931 F.2d 42, 43 n. 1 (11th Cir.1991); *In re Halpern*, 810 F.2d 1061, 1064 (11th Cir.1987); *In re Scarfone*, 132 B.R. 470, 472 (Bankr. M.D.Fla.1991); *see also Mobil Oil Corp. v. Shevin*, 354 So.2d 372, 374 (Fla.1977). While collateral estoppel may bar a bankruptcy court from relitigating factual issues previously decided in state court, however, the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court in the exercise of its exclusive jurisdiction to determine dischargeability. *Halpern*, 810 F.2d at 1064.

▮ The bankruptcy court properly applied collateral estoppel to those facts underlying the state court's finding of fraud in determining dischargeability under § 523(a)(2)(A). The fraud issue at stake in the bankruptcy proceeding was identical to that decided in the state court proceeding. For purposes of § 523(a)(2)(A), a creditor must prove that (1) the debtor made a false representation with intent to deceive the creditor, (2) the creditor relied on the representation, (3) that his reliance was reasonably founded, and (4) that the creditor sustained loss as a result of the representation. *In re Racila*, 138 B.R. 303, 305 (Bankr.M.D.Fla.1992). To prove fraud under Florida law, a plaintiff must establish that the defendant made a "deliberate and knowing misrepresentation designed to cause, and actually causing detrimental reliance by the plaintiff." *First Interstate Dev. Corp. v. Ablanedo*, 511 So.2d 536, 539

(Fla.1987). The elements of common law fraud in Florida " 'closely mirror' the requirements of section 523(a)(2)(A) and, hence, are 'sufficiently identical ... to meet the first prong of the test for collateral estoppel.' " *In re Jolly*, 124 B.R. 365, 367 (Bankr.M.D.Fla.1991) (quoting *In re Powell*, 95 B.R. 236, 239 (Bankr.S.D.Fla. 1989). The issue of fraud in the bankruptcy proceeding was therefore identical to the one involved in the prior litigation, thus meeting the first prong of issue preclusion.

The second prong of Florida's issue preclusion test requires the issue at stake to have been actually litigated in the prior proceeding. The state court tried each element necessary for a determination of fraud, each being fully and actually litigated. The second prong of the test was therefore fulfilled.

▮ The third prong requires that the determination of the issue in the prior litigation to have been a critical and necessary part of the judgment. If the judgment fails to distinguish as to which of two or more independently adequate grounds is the one relied upon, it is impossible to determine with certainty what issues were in fact adjudicated, and the judgment has no preclusive effect. 1B James W. Moore *et al.*, Moore's Federal Practice ¶ 0.443[5.– 1], at 782 (1992). As noted, the state court found St. Laurent liable for breach of the Owners' purchase agreements and warranties against encumbrances and for common law fraud. Ordinarily, punitive damages may not be recovered in breach of contract actions. *Griffith v. Shamrock Village, Inc.*, 94 So.2d 854, 858 (Fla.1957). Punitive damages, however, may be recovered when the acts constituting the breach also amount to an independent cause of action in tort. *Lewis v. Guthartz*, 428 So.2d 222, 223 (Fla.1982); *Griffith*, 94 So.2d at 858. Thus, to recover punitive damages in a breach of contract context, an independent tort must be alleged and proved. Here, the Owners alleged that St. Laurent committed fraud and sought punitive damages under this cause of action only. (Def.'s Second Am. Answer at 10.) The state court based its punitive damages award explicitly upon

its finding of fraud.[4] Thus, because the punitive damages awarded here were unavailable absent an independent finding of fraud, the rendering court's determination that St. Laurent defrauded the Owners was necessary and critical to its judgment.[5]

■■■■ The last issue preclusion prong requires the standard of proof in the earlier litigation to be at least as stringent as that employed in the later litigation. St. Laurent argued to the district court that collateral estoppel did not apply in this case because the state court fraud judgment was determined under a lower burden of proof than the "clear and convincing evidence" standard employed by the bankruptcy court. This argument is meritless. In *Grogan*, the Supreme Court held that the standard of proof to be applied in all dischargeability proceedings under § 523(a) is "the ordinary preponderance-of-the-evidence standard." 498 U.S. at 291, 111 S.Ct. at 661. The state court found St. Laurent liable for fraud under a "greater weight of the evidence" standard, a term of art used interchangeably with "preponderance of the evidence" by the Florida Supreme Court. *See Wieczoreck v. H & H Builders, Inc.*, 475 So.2d 227, 228 (Fla.1985) ("only a preponderance or greater weight of the evidence is required to establish fraud ...."). Thus the evidentiary burdens for fraud under Florida law and under § 523(a)

are identical. As noted by the Court in *Grogan*, "application of the [preponderance] standard will permit exception from discharge of all fraud claims creditors have successfully reduced to judgment." 498 U.S. at 290, 111 S.Ct. at 661. Collateral estoppel, therefore, barred relitigation of the fraud issue and bound the bankruptcy court's fraud analysis under § 523(a)(2)(A).

## B. *Dischargeability Under 11 U.S.C. § 523(a)(2)(A).*

### 1. *Compensatory Damages*

Section 523(a)(2)(A) makes clear, and St. Laurent apparently concedes, that the purely compensatory component of a debt arising from actual fraud is not dischargeable in bankruptcy.[6] The compensatory aspect of the judgment against St. Laurent is exempt from discharge under § 523(a)(2)(A) and the district court is affirmed in this respect.

### 2. *Punitive Damages*

■■■ Whether punitive damage awards are exempt from discharge under § 523(a)(2)(A) is a question of first impression in this circuit. Bankruptcy courts are divided on this issue. Most adhere to the view that such awards are dischargeable under § 523(a)(2)(A). *See, e.g., In re Ell-*

---

**4.** The court stated:

> [T]he [Owners] do have and recover from [St. Laurent] ... punitive damages in the sum of $50,000 due to the fraudulent conduct of said Defendant in representing to the [Owners] that they would receive title to their individual unit weeks free and clear of [First Federal's] mortgage while instead [St. Laurent] misdirected the consideration paid by the [Owners] and converted the same to his own use
> ....

State Court Judgment at 6.

**5.** We need not determine therefore what standards to apply to a Florida judgment supported by multiple, independent grounds. *See Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1168–73 (5th Cir.1981).

**6.** St. Laurent argues, however, that the compensatory component of the state court judgment was composed exclusively of attorney's fees incurred by the appellees and, thus, should have

been discharged. The Florida Supreme Court has dispatched this argument by stating that

> the measure of damages for the breach of a covenant against encumbrances in [a] warranty deed [action] was the amount paid on the costs necessarily incurred by the plaintiff in removing the encumbrance.... It cannot be questioned that counsel fees incurred by plaintiff in obtaining a decree in the suit to quiet title ... was the controlling factor of damages.

*General Properties Corp. v. Gore*, 14 So.2d 411, 415 (Fla.1943). The state court determined that the Owners were required to spend $48,705.22 toward attorney's fees, costs and expenses to obtain releases from the mortgage held by First Federal. This figure constituted the Owners' damages under either theory of recovery. *Id.; Needle v. Lowenberg*, 421 So.2d 678, 680 (Fla. Dist.Ct.App.1982); *see also American Title Ins. Co. v. Coakley*, 419 So.2d 816, 817 (Fla.Dist.Ct. App.1982) (holding that a breach of a warranty deed entitles grantor to recover amount paid to remove encumbrance).

*wanger*, 105 B.R. 551, 556 (9th Cir. BAP 1989); *In re Day*, 137 B.R. 335, 341–42 (Bankr.W.D.Mo.1992); *In re Church*, 69 B.R. 425, 434–35 (Bankr.N.D.Tex.1987); *In re Larson*, 79 B.R. 462, 465 (Bankr. W.D.Mo.1987); *In re Suter*, 59 B.R. 944, 947 (Bankr.N.D.Ill.1986); *In re Cheatham*, 44 B.R. 4, 8–9 (Bankr.N.D.Ala.1984). Other courts disagree and hold that punitive damages for fraud are excepted from discharge by § 523(a)(2)(A). *See In re Manley*, 135 B.R. 137, 144–45 (Bankr.N.D.Okla. 1992); *In re Tobman*, 96 B.R. 429 (Bankr. S.D.N.Y.1989), *rev'd on other grounds*, 107 B.R. 20 (S.D.N.Y.1989); *In re Daniels*, 94 B.R. 205, 206 (Bankr.S.D.Fla.1988); *In re Guy*, 101 B.R. 961 (Bankr.N.D.Ind.1988); *In re Carpenter*, 17 B.R. 563, 564 (Bankr. E.D.Tenn.1982).[7] We hold, however, that punitive damage awards flowing from the same course of fraudulent conduct necessitating an award of compensatory damages are not dischargeable in bankruptcy under § 523(a)(2)(A).

■ We begin by examining the language of the statute itself. Absent clearly expressed legislative intent to the contrary, that language is conclusive. *See Board of Educ. of Westside Community Sch. v. Mergens*, 496 U.S. 226, 235, 110 S.Ct. 2356, 2364, 110 L.Ed.2d 191 (1990); *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Birmingham Trust Nat'l Bank v. Case*, 755 F.2d 1474, 1477 (11th Cir.1985). Section 523(a)(2)(A) provides that a discharge in bankruptcy does not discharge an individual debtor from "any debt ... for money, property, [or] services ... to the extent obtained by ... false pretenses, a false representation, or actual fraud." Our analysis focuses upon the meaning of the term "debt" and whether that term as defined is sufficiently

broad to encompass punitive damage awards.

■ The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12). The terms "debt" and "claim" are coextensive. *Johnson v. Home State Bank*, —— U.S. ——, —— n. 5, 111 S.Ct. 2150, 2154 n. 5, 115 L.Ed.2d 66 (1991). A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). A "right to payment" is "nothing more nor less than an enforceable obligation, regardless of the objectives ... to [be] serve[d] in imposing the obligation." *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559, 110 S.Ct. 2126, 2131, 109 L.Ed.2d 588 (1990).[8]

■ The legislative history of the Bankruptcy Code indicates that "claim" was to be given the "broadest possible definition" H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. 309 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6266; S.Rep. No. 95–989, 95th Cong., 2nd Sess. 22 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808. As noted in *Davenport*,

> Congress chose expansive language in both definitions [of "claim" and "debt"].... For example, to the extent the phrase "right to payment" is modified in the statute, the modifying language ("whether or not such right is ...") reflects Congress' broad rather than restrictive view of the class of obligations that qualify as a "claim" giving rise to a "debt."

495 U.S. at 558, 110 S.Ct. at 2130. Our own precedents confirm that " 'debt' is to be given a broad and expansive reading for purposes of the Bankruptcy Code." *Tran-South Fin. Corp. v. Johnson*, 931 F.2d 1505, 1507 (11th Cir.1991) (quoting *In re Chase & Sanborn Corp.*, 904 F.2d 588, 595

---

7. *See also In re Scheuer*, 125 B.R. 584 (Bankr. C.D.Cal.1991) (holding that bankruptcy court as court of equity has power to determine appropriateness of discharge of punitive damage award); *In re McCall*, 59 B.R. 3 (Bankr.W.D.La. 1986) (holding that courts may not find certain portions of a debt to be nondischargeable and certain other portions dischargeable).

8. The Criminal Victims Protection Act, Pub.L. No. 101–581, § 3, 104 Stat. 2865 (1990), substantially overruled the Supreme Court's holding in *Davenport*. The Court later noted, however, that the Act did not disturb the "general conclusions [in *Davenport*] on the breadth of the definition of 'claim' under the Code." *Johnson*, —— U.S. at ——, ——, 111 S.Ct. at 2154 n. 4.

(11th Cir.1990); *see also In re Thomas*, 12 B.R. 432, 433 (Bankr.S.D.Iowa 1981) ("The definition of 'claim' could not be broader."). Thus, "[i]f a creditor is able to establish the requisite elements of Section 523, the creditor is entitled to collect the 'whole of any debt' he is owed by the debtor." *TranSouth Fin.*, 931 F.2d at 1507 (quoting) *In re Martin*, 761 F.2d 1163, 1168 (6th Cir. 1985); *cf. Birmingham Trust Nat'l Bank*, 755 F.2d at 1477 (determining that "the plain language of [§ 523(a)(2)(A) ] suggests that dischargeability is an all or nothing proposition"). We conclude, therefore, that a judgment requiring payment of punitive and compensatory damages for a common cause of fraudulent conduct is a "debt" as defined by the Bankruptcy Code in § 523(a).

St. Laurent argues, however, that the language of § 523(a)(2)(A) limits nondischargeability to the purely compensatory aspects of a fraud judgment. As enacted in 1978, § 523(a)(2)(A) excepted any debt "for obtaining money, property [or] services ... by ... actual fraud...." In 1984, however, Congress amended § 523(a)(2)(A) to except from discharge "any debt for money, property [or] services ... *to the extent obtained by* ... actual fraud...." *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L.No. 98–353, 1984 U.S.C.C.A.N. (98 Stat.) 333, 376 (emphasis added). The Ninth Circuit examined § 523(a)(2)(A) and concluded that the "to the extent obtained by" language modifies and limits the word "debt." *In re Levy*, 951 F.2d 196, 198 (9th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). Thus, the Ninth Circuit concluded that "the language of the statute suggests that the subsection limits nondischargeability to the amount of benefit to the debtor or loss to the creditor the act of fraud itself created." *Id. see also, e.g., Ellwanger*, 105 B.R. at 555; *In re Day*, 137 B.R. 335, 341 (Bankr.W.D.Mo. 1992).

We do not read the 1984 amendment to § 523(a)(2)(A) in such a limited fashion. It is unclear to what extent, if any, Congress intended the 1984 amendments to alter the pre–1978 practice of holding debts for punitive damages nondischargeable if the compensatory damages "that flow[ed] from one and the same course of conduct" were themselves nondischargeable. *See Coen v. Zick*, 458 F.2d 326, 329–30 (9th Cir.1972) (discussing predecessor to § 523(a)(6)); *In re Houtman*, 568 F.2d 651, 656 (9th Cir. 1978) (in case brought under predecessor to § 523(a)(2)(A), court did not discharge compensatory or punitive award); *see also National Homes Corp. v. Lester Indus., Inc.*, 336 F.Supp. 644 (W.D.Va.1972) (discussing predecessor to § 523(a)(6)); *In re Webster*, 1 B.R. 61 (same) (Bankr.E.D.Va.1979); *cf. In re Franklin*, 726 F.2d 606 (10th Cir. 1984) (same).

The language "to the extent obtained by" is not conclusive proof that Congress sought to prune the breadth of the definition of "debt." Indeed, several courts have noted the language's ambiguity. *See In re Guy*, 101 B.R. at 995; *In re Church*, 69 B.R. at 434 ("It may be conceded that the statutory language is ambiguous and ... difficult to apply...."). At least one bankruptcy court reads the "to the extent obtained by" language as modifying "money, property, services, or ... credit," and not the word "debt." *See Manley*, 135 B.R. at 145. Given this reading, the statute "does not distinguish actual from punitive damages; it distinguishes contractual debts tainted with fraud from debts for mere breach of contract or 'failure to pay.'" *Id.* This ambiguity is unresolved by the amendment's legislative history. *See generally Patterson v. Shumate*, — U.S. —, —, 112 S.Ct. 2242, 2248, 119 L.Ed.2d 519 (1992) (resort to statute's legislative history is appropriate when there is ambiguity or confusion). In such circumstances, "[w]e will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Davenport*, 495 U.S. at 563, 110 S.Ct. at 2133. "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific. The Court has followed this rule with particular care in construing the scope of bankruptcy codification." *Kelly v. Robin-*

*son,* 479 U.S. 36, 47, 107 S.Ct. 353, 359, 93 L.Ed.2d 216 (1986).

■ It is a basic canon of statutory construction that identical terms within an Act bear the same meaning. *See Estate of Cowart v. Nicklos Drilling Co.,* —— U.S. ——, ——, 112 S.Ct. 2589, 2596, 120 L.Ed.2d 379 (1992); *Sullivan v. Stroop,* 496 U.S. 478, 484, 110 S.Ct. 2499, 2504, 110 L.Ed.2d 438 (1990). Thus, Congress' expansive definition of "debt" applies to each subsection of § 523(a), absent clear intent to the contrary. *See Davenport,* 495 U.S. at 562–563, 110 S.Ct. at 2133. The 1984 amendment to § 523(a)(2)(A) is ambiguous and, as such, is insufficient to narrow the meaning of "debt" as employed in § 523(a). As noted by the Tenth Circuit, "there is no reason to conclude that the 1984 amendments were anything but technical and cosmetic. We have found no legislative history reflecting that Congress intended to significantly alter the rights and obligations of creditors and debtors governed by this section." *In re Gerlach,* 897 F.2d 1048, 1051 n. 2 (10th Cir.1990). We decline to erode past bankruptcy practice by giving effect to ambiguous statutory language absent clear direction from Congress. *Davenport,* 495 U.S. at 562–563, 110 S.Ct. at 2133; *Kelly,* 479 U.S. at 47, 107 S.Ct. at 359. Given its "broadest possible definition," the term "debt" encompasses an award for punitive damages arising from the same conduct as necessitated an award of compensatory damages, notwithstanding the 1984 amendment to § 523(a)(2)(A). Section 523(a)(2)(A), therefore, excepts from discharge that part of a judgment for fraud consisting of punitive damages.[9]

■ This holding comports with the "fresh start" policy of the Bankruptcy Code. While a "central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt[,]' ... the [Bankruptcy Code] limits the opportunity for a completely new beginning to the '*honest but unfortunate debtor.*' " *Grogan,* 498 U.S. at 286–87, 111 S.Ct. at 659 (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed.1230 (1934)) (emphasis added); *see also Williams v. United States Fidelity & Guar. Co.,* 236 U.S. 549, 554–55, 35 S.Ct. 289–290, 59 L.Ed. 713 (1915). Punitive damages are imposed upon defendants who are culpable in the extreme, not upon the merely honest but unfortunate. *Manley,* 135 B.R. at 147. The general policy that exceptions to discharge are to be construed strictly against the creditor and liberally in favor of the debtor likewise applies to honest debtors only. *Gerlach,* 897 F.2d at 1052; *In re Van Horne,* 823 F.2d 1285, 1287 (8th Cir. 1987); *see also In re Dvorak,* 118 B.R. 619, 631 (Bankr.N.D.Ill.1990) (finding that Bankruptcy Code's fresh start policy should have no application to debtor who has committed a nondischargeable act so grievous that after a full trial on the merits the trier of fact finds punitive damages appropriate). While protecting honest debtors, the Bankruptcy Code also seeks to protect creditors whom the debtor has harmed by "egregious conduct." *In re Britton,* 950 F.2d 602, 606 (9th Cir.1991). Moreover, the fraud exceptions to discharge exist to punish the debtor for committing fraud. *See Birmingham Trust Nat'l Bank,* 755 F.2d at 1477. Accordingly, the malefic debtor may not hoist the Bankruptcy Code as protection from the full consequences of fraudulent conduct. *Cf. TranSouth Fin. Corp.,* 931 F.2d at

---

9. In *Grogan,* the Supreme Court declined to address the question now before us. It stated, however, via footnote that "[a]rguably, fraud judgments in cases in which the defendant did not obtain money, property, or services from the plaintiffs and those judgments that include punitive damages awards are more appropriately governed by § 523(a)(6). . . ." 498 U.S. at 282 n. 2, 111 S.Ct. at 657 n. 2. We decline to accord much weight to this dictum. First, the Court merely articulated an argument, not a conclu-

sion. Second, the Court's language does not intimate that punitive damages awards may never be nondischargeable under § 523(a)(2)(A). The Court merely stated that "arguably" such awards are better governed by § 523(a)(6). Last, in the course of determining the proper standard to be applied in dischargeability proceedings, the Court in *Grogan* actually upheld an award of punitive and compensatory damages deemed by the bankruptcy court to be nondischargeable under § 523(a)(2)(A).

1508 (stating that debtor attempting to abuse the proceedings of bankruptcy not entitled to the complete medley of bankruptcy protections).

We limit our holding to § 523(a)(2)(A) only. We have no occasion to review the bankruptcy court's determinations under § 523(a)(4). Moreover, we decline to decide whether the punitive damage portion of the judgment against St. Laurent would be excepted from discharge under § 523(a)(6). Section 523(a)(6) exempts from discharge debts "for willful and malicious injury by the debtor...." The Owners did not seek a determination of whether St. Laurent's conduct, which the state court found deserving of punitive damages, amounted to "willful and malicious injury" as required by § 523(a)(6). The bankruptcy court therefore did not consider dischargeability under § 523(a)(6); nor do we.

█ We are compelled, however, to address briefly concerns raised by § 523(a)(7). Section 523(a)(7) exempts from discharge any debt "to the extent that such debt is for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit...." Several courts have determined that § 523(a)(7) restricts nondischargeability of noncompensatory damages solely to those "fine[s], penalt[ies] or forfeiture[s]" payable to the government. *See, e.g., In re Alwan Brothers Co.*, 105 B.R. 886, 891 (Bankr.C.D.Ill.1989) (holding that punitive damages awarded to private litigant are dischargeable); *In re Suter*, 59 B.R. at 947 (addressing dischargeability of treble damages under RICO).

Our precedents have implicitly rejected this reasoning by upholding punitive damage awards as nondischargeable under § 523(a)(6). *See In re Yanks*, 931 F.2d at 42–43; *In re Latch*, 820 F.2d 1163, 1166 (11th Cir.1987). Moreover, we agree with the Ninth Circuit's explanation that "[i]njured private plaintiffs are not precluded from relying on the exceptions set forth in other subsections of section 523 merely because one subsection precludes discharge of penalties owed to the government." *Britton*, 950 F.2d at 606; *see also In re Dahlstrom*, 129 B.R. 240, 246 (Bankr. D.Utah 1991) ("There is nothing in the language of § 523(a) or its legislative history to indicate that subsection (a)(7) was intended to preclude private entities from pursuing nondischargeability judgments of punitive damages under its other subsections."); *Manley*, 135 B.R. at 148 (holding that Bankruptcy Code treats exemplary or punitive damages distinctly from a "fine, penalty or forfeiture," and thus § 523(a)(7) does not apply to exemplary or punitive damages awarded in ordinary civil litigation).[10] We conclude that § 523(a)(7) does not preclude us from reaching a determination of nondischargeability under § 523(a)(2)(A).

## III. *CONCLUSION*

The district court properly affirmed the bankruptcy court's application of collateral estoppel to bar relitigation of those facts necessary for a determination of dischargeability under § 523(a)(2)(A). Moreover, the district court's finding of nondischargeability under § 523(a)(2)(A) is fully supported by the record and correct. Accordingly, we affirm the district court's judgment.

AFFIRMED.

## ORDER

June 22, 1993.

Appellant's petition for rehearing and/or motion to correct erroneous caption of opinion is GRANTED to the extent that the caption is corrected as shown above.

---

**10.** We note the Supreme Court's suggestion, offered in footnoted dicta, that § 523(a)(7) "seems ... to prevent application of *that subsection* to wholly private penalties such as punitive damages." *Kelly*, 479 U.S. at 51 n. 13, 107 S.Ct. at 361–362 n. 13. (emphasis added). It appears, however, that the Court may have been limiting its analysis to § 523(a)(7). *See Dahlstrom*, 129 B.R. at 246 n. 7. Moreover, the Court later stated that it would not apply its analysis of § 523(a)(7) in *Kelly* to narrow its construction of the term "claim" in 11 U.S.C. § 101(5)(A). *Davenport*, 495 U.S. at 559, 110 S.Ct. at 2131; *see also Dahlstrom*, 129 B.R. at 246 n. 7.