In the Matter of Wyman Daniel DOVER, Debtor.

Cleve CARLAN, Plaintiff,

v.

Wyman Daniel DOVER, Defendant.

Bankruptcy No. A94–61767–WHD.
Adv. No. 94–6361A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

July 11, 1995.

Timothy C. Batten, Schreeder, Wheeler & Flint, Atlanta, GA, for plaintiff.

J. Robert Williamson, Scroggins & Williamson, Atlanta, GA, for defendant.

### ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter comes before the Court on the Complaint to Determine Dischargeability filed by Cleve Carlan (hereinafter "Plaintiff"). By his Complaint, the Plaintiff alleges that Wyman Daniel Dover (hereinafter "Debtor") knowingly made false representations which induced the Plaintiff to continue a then existing indebtedness after having released the security interest related to the loan. Consequently, the Plaintiff seeks this Court's determination that the debts incurred by such fraudulent conduct are non-dischargeable under § 523(a)(2)(A) of the Bankruptcy Code. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(I). Having taken these matters under advisement, the Court now bases its determination upon the following Findings of Fact and Conclusion of Law.

### FINDINGS OF FACT

The factual background of this dispute remains hotly contested by the parties. Having weighed the relative credibility of the testimony offered by each party, the Court finds that version of the events which the Plaintiff has presented to be the more credible one. The Court, therefore, will summarize this accepted version as a presentation of its factual findings.

In 1985, the Debtor hired the Plaintiff to assist him in the construction of high-end residential homes. This relationship proved successful, and the Debtor ultimately assigned the Plaintiff the role of Project Manager/Superintendent. This position did not provide the Plaintiff with access to the financial records of the Debtor. However, due to his supervisory role, the Plaintiff had frequent contact with the Debtor's general creditors. Having never heard one of those creditors complain about the Debtor's failure to stay current, the Plaintiff assumed the Debtor to be financially sound and a good credit risk.[1]

The next watershed point in these events occurred when the Plaintiff and his wife sold their home. As a consequence of this transaction, the couple received a large amount of cash, which they earmarked for a retirement nestegg. When the Debtor became aware of the Plaintiff's cash holdings, he asked him if he would consider making a loan. Needing an investment vehicle for his funds and trusting in the creditworthiness of the Debtor, the Plaintiff agreed to such a loan.

The parties executed a promissory note in the amount of $82,000.00. The loan provided for a 12% annual interest rate, well in excess of the market rate at that time. Under the terms of that note, the Debtor was to make interest-only payments until January of 1991, when the balance of this "balloon note" would become due. Lastly, the Plaintiff insisted that the Debtor produce some security for the loan. Security came in the form of a second mortgage on a Marietta commercial property owned by the Debtor. This mortgage more than adequately protected the Plaintiff's interest.

---

1. According to the Plaintiff, the everyday operations of the business also supported this conclusion. Specifically, the Debtor constructed very expensive homes under a high "retainage" fee, lived in a fair degree of luxury, and provided his employees with equipment such as new trucks and cellular phones. Having observed these vestiges of success, the Plaintiff concluded that the Debtor made good money and paid his debts on time.

The loan arrangement proceeded as planned, and the Debtor made each scheduled payment on or before the date it became due. Then, in February of 1990, the Debtor told the Plaintiff that he was selling the property securing the note and that he intended to use the proceeds of the sale to pay off the loan. On the afternoon of February 20th, the Debtor produced a check for $81,-565, the balance then owing under the loan, and the Plaintiff released his mortgage on the property. The Plaintiff endorsed the check, but could not deposit it because the banks had already closed. The Plaintiff, therefore, took the check home with him and made plans to deposit it the following day.

On the morning of the 21st, before the Plaintiff had left for the bank, the Debtor approached him to discuss continuing the loan arrangement. Given the Debtor's flawless payment history and the loan's above average rate of return, the Plaintiff agreed to consider such a continuation. Therefore, following a promise by the Debtor to execute a new promissory note and provide a new source of security,[2] the Plaintiff consented in allowing the current arrangement to continue. The Debtor resumed his monthly payments, and the Plaintiff kept possession of the Debtor's uncashed check.

However, the note and security agreement promised by the Debtor were not forthcoming. Although hesitant to browbeat his employer, the Plaintiff made several requests that the Debtor produce the promised items. On July 1, 1991, some sixteen months after the renegotiation, the Debtor executed a promissory note in favor of the Plaintiff. However, the Debtor never gave the Plaintiff the security interest which he had promised.

Subsequently, in February of 1994, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code. As of that date, the Debtor had made seventy-one (71) consecutive interest payments to the Plaintiff in a timely fashion, generating an aggregate of approximately $58,000.00 in remittances.

However, the principal balance of the loan remained outstanding and subject to discharge in bankruptcy.

On the basis of the Debtor's broken promise to provide security for the loan, the Plaintiff presented this Court with the present Complaint to Determine Dischargeability of the Debtor's obligation to him. According to the Plaintiff, the Debtor's false promise to provide security amounts to an act of fraud, such that discharge of the debt should be denied under 11 U.S.C. § 523(a)(2)(A).

CONCLUSIONS OF LAW

▮▮▮ Against the general rule that bankruptcy operates to discharge debt obligations, § 523 provides for limited circumstances when that discharge will be denied. Courts make a custom of construing these exceptions narrowly, however, in order to benefit the honest debtor. *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1163 (11th Cir.1995); *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 680 (11th Cir.1993); *see e.g. Bailey v. Chatham (In re Bailey)*, 171 B.R. 703, 706 (Bankr.N.D.Ga.1994) (Drake, J.). Moreover, the objecting party carries the burden of establishing by a preponderance of the evidence that the debts in question are excepted from discharge. *Grogan v. Garner*, 498 U.S. 279, 289–91, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

In terms relevant to the instant case, the language of § 523 provides:

\* \* \* \* \* \*

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a state-

---

**2.** According to the Plaintiff, the Debtor did not make any specific promises as to which property he would offer as collateral. Nor did the Plaintiff make any investigation of whether the Debtor had any such property. Rather, the Plaintiff understood and trusted that the Debtor either had mortgageable property or would acquire such property and then give him the mortgage which he had promised.

ment respecting the debtor's or an insider's financial condition;

\* \* \* \* \* \*

11 U.S.C. § 523(a)(2)(A). Here, the Plaintiff has alleged that the Debtor perpetrated a false representation or actual fraud against him in the course of obtaining a renewal of credit.[3] As the Eleventh Circuit has pointed out, a plaintiff relying upon such an argument must establish that: (1) the Debtor made a false representation with the intent to deceive his creditor; (2) the creditor relied upon that representation; (3) this act of reliance was reasonably founded; (4) the creditor sustained a loss as a consequence of that representation and reliance. *St. Laurent*, 991 F.2d at 676. The Court finds, and the parties appear to agree, that the Plaintiff has met the second and fourth elements of this standard. This matter, therefore, distills down to issues of whether the Debtor made a false representation with deceitful intent and, if so, whether the Plaintiff acted reasonably in relying upon that representation.

I. *The Existence of an Act of False Representation.*

■■■ Plaintiff appears to focus the brunt of his misrepresentation argument upon the fact that the Debtor broke a promise to provide a mortgage security at some future time.[4] In and of itself, however, this argument falls short of the mark. It remains a settled point of fraudulent non-dischargeability analysis that the breach of a promise to perform some future act does not amount to a misrepresentation. 3 COLLIER ON BANKRUPTCY ¶ 523.08 (15th ed. 1995) ("A mere promise to be executed in the future is not sufficient to make a debt non-dischargeable even though there is no excuse for the subsequent breach"). This Court finds the follow-

ing excerpt from one landmark Georgia case particularly instructive on this issue:

\* \* \* \* \* \*

[I]n this case the only alleged fraud of which there was any proof consisted of a false promise on the part of the defendant thereafter to secure the debt by mortgage and also by personal indorsements, or to do some other act in the future, and therefore *did not constitute such fraud as would render the defendant's discharge in bankruptcy inoperative as to such debt.*

*Stephens v. Milikin*, 35 Ga.App. 287, 133 S.E. 67 (1926) (cited in COLLIER at ¶ 523.08 n. 17). Thus, the bare fact that the Debtor failed to keep his promise to provide a mortgage on this loan has no bearing on the non-dischargeability question.

■■■ In a related fashion, however, the debt in question may be deemed non-dischargeable if, in the course of this promise, the Debtor misrepresented his *intention.* That is, a fraud may have occurred if, at the time of the promise, the Debtor had no plans of ever presenting mortgageable property, yet made a promise to the contrary. COLLIER at ¶ 523.08. In such a case, the defendant's having lied about his known or reasonably certain plans for the future is said to be an act of misrepresentation in and of itself. *In re Friend*, 156 B.R. 257, 262 (Bankr. W.D.Mo.1993).

Here, however, the Plaintiff has failed to make such a showing of proof. The evidence presented to this Court only demonstrates that the Debtor had no mortgageable property at the time of the promise and that he never came into possession of such mortgageable property thereafter. These two facts do nothing to elucidate whether the Debtor *intended* to acquire such property at some point in the future.[5]

---

3. Although the conceptual boundaries between "false pretenses" and "false representation" may appear blurry, the two principles do lend themselves to distinction. Specifically, a false representation is said to have occurred where the defendant has made an expressed, rather than an implied, misrepresentation. *Matter of Schnore*, 13 B.R. 249, 251 (Bankr.W.D.Wis.1981).

4. The Plaintiff has produced no evidence that the Debtor, expressly or impliedly, represented that he had possession of such mortgageable property

at the time of the promise. Rather, the Plaintiff argues that the Debtor promised to acquire such property, by some means, and present it for security. According to the Plaintiff, it is this breach of promise for future action which constituted fraud or misrepresentation.

5. As much as anything else, these two facts could simply establish that, although harboring the noblest of intentions to follow through on his promise of acquiring mortgageable property, the Debtor was unable to do so in practice. Indeed,

In sum, therefore, the Plaintiff has failed to establish the first element of his burden—that some act of cognizable misrepresentation occurred. Accordingly, it is unnecessary for this Court to address the remaining issues of intentionality of conduct or reasonable reliance by the Plaintiff.

### CONCLUSION

The Court finds that the Plaintiff has failed to establish false representation, false pretense or actual fraud which would operate to except this debt from discharge under 11 U.S.C. § 523(a)(2)(A). Plaintiff's Complaint to Determine Dischargeability of the Debt, therefore, is **DENIED.**

**IT IS SO ORDERED.**

the bankruptcy courts are filled with individuals whose optimistic plans are spoiled by intervening and unforeseen financial misfortunes. This Court, therefore, finds it impossible to leap from the mere fact of ultimate non-acquisition to a conclusion regarding the Debtor's intentions at the outset.