**In re Marilyn Ann ALEXANDER, Debtor.**

**CHECKCARE SYSTEMS, Plaintiff,**

**v.**

**Marilyn Ann ALEXANDER, Defendant.**

**Bankruptcy No. 96–3124–APG.**
**Adversary No. 96–249–APG.**

United States Bankruptcy Court, M.D. Alabama.

June 23, 1997.

Sabrina L. McKinney, Law Offices of Richard C. Dean, Jr., Montgomery, AL, for Plaintiff.

Jerry L. Cruse, Montgomery, AL, for Defendant.

## OPINION

A. POPE GORDON, Bankruptcy Judge.

Checkcare Systems filed a complaint under 11 U.S.C. § 523(a)(2)(A) to determine the dischargeability of three worthless checks written by the debtor.[1]

Checkcare Systems filed an application for default judgment which came on for evidentiary hearing on March 25, 1997.[2]

The debtor did not appear at the hearing in person or through counsel.

The undisputed facts are as follows.

In February 1993, the debtor wrote a check to a local clothing store in the amount of $67.99 on an account with First Lowndes Bank, Hayneville, Alabama.

The bank dishonored the check and forwarded the check directly to Checkcare Systems under payee authorization.[3]

The bank notified the debtor by letter in March 1993 that the account had been closed because overdrawn.[4]

Later that year, the debtor issued two more checks on the closed account to a local pizza merchant in the amounts of $23.51 and $28.00.[5]

The bank dishonored the checks and similarly forwarded the checks directly to Checkcare Systems under payee authorization.

Checkcare Systems endorsed the checks "for the purposes of collection and suit" under power of attorney and reimbursed the merchants the face amount of the dishonored checks.[6]

Checkcare obtained a simple judgment on the first check in state court on August 30, 1993 in the amount of $314.99.[7] The face amount of the check was $67.99. The judgment purportedly includes costs, interest, attorney's fees, or other damages allowed under Alabama's worthless check law.[8]

The debtor included the judgment debt to Checkcare for payment through the confirmed plan in the debtor's then pending chapter 13 case filed in October 1992.

1. Generally, 11 U.S.C. § 523(a)(2)(A) makes nondischargeable a debt obtained by "false pretenses, a false representation, or actual fraud." Checkcare filed the complaint as transferee of the debt. The standing of Checkcare to contest dischargeability under § 523(c) has not been raised. The decision in this proceeding renders resolution of the issue unnecessary.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Checkcare filed a brief following the hearing.

3. A Checkcare officer testified that merchants using its collection services sign a mail release authorization directing the merchants' banks to send dishonored checks directly to Checkcare.

4. See letter from First Lowndes Bank stating that the account "has been overdrawn since January 13, 1993." Plaintiff's Ex. 1. However, the bank signature card reveals that the account was not actually closed until April 23, 1993—two months after issuance of the first check. The debtor opened the account in December 1992 with an initial deposit of $1,000.00. See Signature Card, Plaintiff's Ex. 1.

5. The checks were issued in July and October 1993, respectively.

6. Checkcare contracts to reimburse members the face amount of qualifying checks for goods or

services which are returned by the bank stamped or marked "Insufficient Funds," "Refer to Maker," "Uncollected Funds," or "Account Closed." A check qualifies for reimbursement if it contains the maker's name, address, work and home telephone numbers, and driver's license number. Checkcare accepts no more than two checks per person from any one member. The contracts provide, "All future right to collection of all Checks returned and service charges are surrendered to [Checkcare] exclusively." The contracts require the customer "to display [a] CHECKCARE notice in appropriate areas." Merchants become members of Checkcare by paying a prescribed annual fee. Checkcare Contracts, Plaintiff's Ex. 7.

7. The recorded certificate of judgment in the District Court of Montgomery County, Alabama states that "Checkcare Systems Inc. recovered of defendant [debtor] in said court a judgement without waiver of exemptions for the sum of $287.99 dollars plus $27.00 dollars court costs...." Plaintiff's Ex. 2.

8. *Ala.Code* § 6–5–285 (civil) and § 13A–9–13.1 (criminal) (1975). The debtor has not been criminally prosecuted for issuance of the instant worthless checks.

Checkcare received $109.95 through payments under the plan.[9] The face amount of all three checks is $119.50.

Checkcare filed the instant complaint under 11 U.S.C. § 523(a)(2)(A) to except the debt for the worthless checks from discharge. Section 523(a)(2)(A) excepts from discharge debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by … false pretenses, a false representation, or actual fraud."

### Burden of Proof

■ To sustain a prima facie case,[10] Checkcare bears the burden of proving that the debtor obtained property from the merchants by false pretenses, a false representation, or actual fraud. Under § 523(a)(2)(A), fraud consists of the following elements: (1) a false pretense or representation, (2) intent to deceive, (3) justifiable reliance, and (4) resulting loss.[11]

■ "The debtor must be guilty of positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir.1986).

■ The very nature and philosophy of the bankruptcy law require exceptions to dischargeability to be construed strictly. *Hunter*, 780 F.2d at 1579.

Checkcare has failed in the instant proceeding to prove (1) that the debtor obtained property in exchange for the worthless checks and (2) that the merchants actually relied on the worthless checks.[12]

### Obtaining Property

■ "Not all frauds are included within the exception of section 523(a)(2)(A), but only those involved in the obtaining of money, property or services by 'false pretenses or false representations.' "[13]

■ Neither the testimony nor the documentary evidence demonstrate that the debtor obtained food and clothing from the merchants in exchange for the worthless checks. Checkcare's sole witness was an officer of the company who was not present at the transactions between the merchants and the debtor.[14]

■ The checks may have been given for an antecedent debt, especially the check to the clothing store.[15] Moreover, the checks may have been postdated and not fraudulent when written.

9. The debtor dismissed the case under chapter 13 in August 1994 and immediately filed another case under chapter 13. In the second case, the debtor specially classified Checkcare with specified payments of $10.00 per month toward payment of the judgment debt. The second case was dismissed in June 1996 on motion by the trustee. The debtor filed the instant case under chapter 7 one month later. The debtor filed yet a third chapter 13 case in February 1997 and provided for payment in full to Checkcare of the amount requested by Checkcare in this adversary proceeding, $420.28. Checkcare ceased collection efforts on the checks because of the cases pending in chapter 13, chapter 7, or both.

10. Checkcare is required only to sustain a prima facie case in this uncontested hearing.

11. 4 Lawrence P. King, *Collier on Bankruptcy* 523.08[1][e], at 523–44 and 523–45 (15th ed. rev.1996); *see also Field v. Mans*, — U.S. —, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir.1986); *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 676 (11th Cir.1993).

12. Because each of these issues alone is dispositive of the instant proceeding, the court will not address the remaining elements of Checkcare's burden of proof.

13. 4 Lawrence P. King, *Collier on Bankruptcy 1* 523.08[1][d], at 523–42 (15th ed. rev.1996). In other words, § 523(a)(2)(A) applies when the debt follows a transfer of value or extension of credit induced by falsity or fraud not going to financial condition. *Field v. Mans*, 516 U.S. 59, — – —, 116 S.Ct. 437, 441–42, 133 L.Ed.2d 351, 359 (1995).

14. Even though the Checkcare contract states that the company will reimburse members for checks only "for payment of goods or services," the witness obviously could not testify that the merchants transferred food or clothing to the debtor at the time the checks were issued.

15. "Knowledge that checks are worthless does not necessarily amount to a fraudulent intent, if the checks are given for antecedent debts." *Smith v. Southeastern Fin. Corp.*, 337 So.2d 330, 333 (Ala.1976).

■ Faced with the requirement of strict construction of § 523(a)(2)(A) and without any evidence of the circumstances surrounding issuance of the checks, the court cannot conclude that the debtor obtained any property in exchange for the worthless checks.[16]

## Justifiable Reliance

"No one, of course, doubts that some degree of reliance is required to satisfy the element of causation inherent in the phrase 'obtained by' " fraud.[17]

Checkcare must prove that the merchants actually and justifiably relied on the worthless checks in transferring property (food and clothing) to the debtor.[18]

The uttering of insufficient funds checks is an "unremarkable feature of everyday commerce." [19] Given the large number of worthless checks merchants regularly receive,[20] the argument that merchants rely on the integrity of all checks tendered would not be credible.[21]

■ The court concludes that the merchants relied not on the worthless checks but on the expectation of reimbursement from Checkcare which in turn relied on the expectation of damages under Alabama's worthless check law.[22]

■ "The maker of a fraudulent misrepresentation is not liable to one who does not rely upon its truth but upon the expectation that the maker will be held liable in damages for its falsity." [23]

Judgment will enter for the debtor based on lack of proof.

---

16. This element intertwines with reliance. Merchants cannot be said to have relied on checks for which they transferred no property in exchange.

17. *Field v. Mans,* 516 U.S. at ——–——, 116 S.Ct. at 441–42, 133 L.Ed.2d at 359. As stated above, 11 U.S.C. § 523(a)(2)(A) excepts from discharge a debt for property *obtained by* fraud. Checkcare did not clearly address the reliance issue in brief.

18. *Field v. Mans,* 516 U.S. at ——–——, 116 S.Ct. at 443–44, 133 L.Ed.2d at 362.

19. *See Heinold Commodities & Secs., Inc. v. Hunt (In re Hunt),* 30 B.R. 425 (M.D.Tenn.1983) (citing *Williams v. United States,* 458 U.S. 279, 284–86, 102 S.Ct. 3088, 3091–93, 73 L.Ed.2d 767 (a check is literally not a statement or a representation)).

20. Apparently the number is large enough for the instant merchants to justify the expense of becoming a member of Checkcare.

21. Merchants which are members of Checkcare purportedly do not accept checks which do not qualify for reimbursement under the contract with Checkcare.

22. *Ala.Code* § 6–5–285 (civil) and § 13A–9–13.1 (criminal) (1975). Proof of reliance is not essential in a worthless check action under Alabama

law. *See Smith v. Southeastern Fin. Corp.,* 337 So.2d 330, 333 (Ala.1976) ("If there is a showing of the requisite 'intent to defraud,' a plaintiff need not show, though he may desire to, that he relied on the representation to his detriment.") However, such proof is required in a dischargeability action under 11 U.S.C. § 523(a)(2)(A). *Field v. Mans,* —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

23. *Restatement (Second) of Torts* § 548 (1976). *See* Comment a. to § 548 which states:

In order to justify recovery, the recipient of a misrepresentation must rely upon the truth of the misrepresentation itself, and his reliance upon its truth must be a substantial factor in inducing him to act or to refrain from action. (See § 546). It is not enough that, without belief in its truth, he proceeds to enter into the transaction in the expectation that he will be compensated in an action for damages for its falsity.

*Restatement (Second) of Torts* § 548 cmt. a (1976). "We construe the terms in 523(a)(2)(A) to incorporate the general common law of torts, the dominant consensus of common-law jurisdictions, rather than the law of any particular State." *Field v. Mans,* 516 U.S. at —— n. 9, 116 S.Ct. at 443 n. 9, 133 L.Ed.2d at 362 n. 9. The "most widely accepted distillation of the common law of torts" is the Restatement (Second) of Torts (1976). *Id.* at ——–——, 116 S.Ct. at 443–44, 133 L.Ed.2d at 362.