373 So.2d 362 (1979)
Wanda Jane TETSTONE and Roger Dale Tetstone, Appellants,
v.
H.H. ADAMS, M.D., Appellee.
No. LL-124.
District Court of Appeal of Florida, First District.
June 13, 1979.
Rehearing Denied August 16, 1979.
J. Randall Hooper and John P. Roscow, III, of Scruggs, Carmichael, Long, Tomlinson, Roscow, Pridgeon, Helpling & Young, Gainesville, for appellants.
John Moffitt Howell, of Howell, Wilt & Howell, P.A., Jacksonville Beach, for appellee.
MELVIN, Acting Chief Judge.
The Tetstones appeal a final summary judgment entered in favor of Dr. Adams based upon a finding that Mrs. Tetstone had knowledge of her injuries by September 17, 1973 so that the two year statute of limitations barred her action filed December 7, 1977. § 95.11(6), Fla. Stat. (1973). The sole issue is whether Mrs. Tetstone discovered or through the use of reasonable care should have discovered, the injury prior to December 7, 1975. We think this constituted an issue of material fact and reverse.
The complaint states that Mrs. Tetstone began treatment for chronic lower abdominal pain in July of 1972. This treatment culminated in a total hysterectomy performed by Dr. Adams on July 17, 1973. The depositions and affidavits reveal that interim treatment consisted of two dilation *363 and curettage procedures, exploratory surgery, and removal of her appendix and an infected fallopian tube. The pain continued and other doctors examined her. One doctor suggested to her that the pain was psychological, whereas another suggested scar tissue might be the cause. The complaint alleges that in the course of the hysterectomy surgery, Dr. Adams committed negligent acts causing ureteral blockage and a ureterovaginal fistula through which urine began to leak. She reported this condition to Dr. Adams at her post-operative check up. Her condition was diagnosed and she was hospitalized in August, 1973. Dr. Adams' affidavit states that he told Mrs. Tetstone of the diagnosis and that the probable cause was the hysterectomy operation of July 17, 1973. However, Mrs. Tetstone's affidavit states that upon inquiry as to the cause of her condition in August, Dr. Adams merely told her that something else had shown up on the x-ray and that the specialists he referred her to could better explain it to her. The specialists performed tests to discover her exact condition. Mrs. Tetstone asked one of them what had been wrong and he stated that she had a block in the right ureter and that the ureter had a small hole just above the block. She asked him whether the hysterectomy was necessary and had the block caused her history of pain. He replied that he didn't think the block could have been there for as long as she had had the pain. She asked about the cause of the block, and he stated that sometimes the ureter would just grow together and that the ureter could have punctured itself because of the pressure. After hospitalization and further treatment spanning several weeks, the pain and her condition was apparently cured. Her last hospital release was September 17, 1973.
Notations in the Bradford County Hospital records, made by Dr. Adams, indicated that Mrs. Tetstone's condition followed hysterectomy surgery. The Alachua County Hospital record indicated that her condition had been caused by a ureteral injury. Dr. Adams pleaded the defense of the statute of limitations and Mrs. Tetstone responded that through the use of reasonable care, she should not have known of the injury until August, 1976, at which time she discovered a note in the hospital's accounting department indicating she had sustained a surgical injury occurring on or about July 17, 1973.
Aside from active concealment constituting fraud, there is a recognized fiduciary, confidential relationship of physician-patient imposing on the physician a duty to disclose known facts. Nardone v. Reynolds, 333 So.2d 25, 39 (Fla. 1976). Mrs. Tetstone was not on notice as to either the negligent act or the injury caused thereby where she had no actual knowledge of either fact because the physician, Dr. Adams, failed to reveal to her facts [as distinguished from mere possibilities or conjecture] known to him relating to the nature and/or cause of her adverse physical condition. Almengor v. Dade County, 359 So.2d 892, 894 (Fla. 3d DCA 1978). The statute of limitations is tolled upon the happening of this event. Nardone, supra; Almengor, supra. Although Dr. Adams alleges he told Mrs. Tetstone that the hysterectomy operation probably caused her condition, this claim is disputed and is therefore an issue to be resolved by the fact finder.
Although the hospital records indicate that the hysterectomy operation and the condition of the plaintiff after surgery were related, we do not think that, as a matter of law, her resulting condition, as opposed to her prior condition, was so severe as to put her on notice of the possible invasion of her legal rights through the exercise of reasonable diligence. Therefore, the content of the hospital records need not, as a matter of law, be imputed to the Tetstones. Nardone, 333 So.2d at 34. Moreover, the hospital records contained many technical medical terms and any reference as to the cause of Mrs. Tetstone's condition was effectively buried in the records. There is no evidence to suggest Mr. or Mrs. Tetstone possessed any medical acumen beyond that of ordinary lay persons. Compare MacMurray v. Board of Regents, 362 So.2d 969 (Fla. 1st DCA 1978).
*364 This case is similar to Brooks v. Cerrato, 355 So.2d 119 (Fla. 4th DCA 1978) cert. denied, 361 So.2d 831 (Fla. 1978), wherein the plaintiff woke up from an operation, her arm hurt, and she could not lift it. She attributed the paralysis to an expected general physical weakness after surgery. It was not until later that she was held to have knowledge of her injury. This occurred when she was told by another doctor that she could not use her arm because of a damaged nerve in her neck. The court held that the defendants had not conclusively shown that plaintiff discovered, or through use of reasonable care should have discovered, that an injury (as opposed to a mere temporary post-operative symptom) had occurred. Here, Mrs. Tetstone's prior medical history of abdominal problems raises a fact issue regarding her knowledge that an injury, as opposed to a post-operative condition or manifestation of a prior condition, had occurred.
In Almengor, supra, the court acknowledged that there was some evidence in the record that, prior to the running of the statute of limitations, plaintiff was aware or should have been aware that her baby had been born mentally retarded. However, the court stated:
We do not believe, however, that this evidence put the plaintiff on notice as a matter of law that the baby was injured during birth because such evidence just as reasonably could have meant that the baby had been born with a congenital defect without any birth trauma. (Emphasis added)
In Almengor, the court was also persuaded that "a genuine issue of material fact as to whether the doctors, as employees of the defendant hospital who delivered the plaintiff's baby, actually knew, or should have known through efficient diagnosis, of a physical injury to the baby inflicted during birth but failed to so inform the plaintiff which thereby kept the plaintiff in ignorance thereof. If true, such non-disclosure resulting in successful concealment would also toll the running of the statute of limitations." (Emphasis added). Almengor, 359 So.2d at 895. Likewise, Mrs. Tetstone's history of abdominal pains and various surgical operations and her claim of the suggestion made to her that "sometimes the ureter would just grow together," lead us to conclude that the issue regarding the statute of limitations was not a proper subject for summary judgment. Reversed and Remanded.
BOOTH and LARRY G. SMITH, JJ., concur.