**In re Reynald POULIOT, Debtor.**

**Tyler CACCAMO, et al., Plaintiff,**

v.

**Reynald POULIOT, Defendant.**

**Bankruptcy No. 92–25155–BKC–PGH.**
**Adv. No. 96–1095–BKC–PGH–A.**

United States Bankruptcy Court,
S.D. Florida.

May 30, 1996.

---

**644**

William C. Stalions, Ft. Lauderdale, FL, for Reynald Pouliot.

Marika Tolz, Trustee, Hollywood, FL.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PAUL HYMAN, Jr., Bankruptcy Judge.

**THIS MATTER** came before the Court upon Defendant's, Reynald Pouliot ("Dr. Pouliot"), Motion for Summary Judgment and Amended Motion for Summary Judgment (collectively, Dr. Pouliot's "Motion"), Plaintiffs', Tyler Caccamo, a minor, by and through his parents and legal guardians, Anthony Caccamo and Sheila Caccamo, and Anthony Caccamo and Sheila Caccamo, individually (the "Plaintiffs"), Response and Memorandum in Opposition to Motion for Summary Judgment (the "Response"), Dr. Pouliot's Reply Memorandum in Support of Amended Motion for Summary Judgment (the "Reply"), and the Joint Stipulation of Facts and Amendment to the Joint Stipulation of Fact Regarding Dischargeability of Debt (collectively, the "Joint Stipulation"), and the Court having considered Dr. Pouliot's Motion, the Response, the Reply, the Joint Stipulation, the deposition of Sheila Caccamo (the "Caccamo Deposition"), the deposition of Dr. Paul Gatewood (the "Gatewood Deposition") and other supporting evidence, hereby makes the following findings of fact and conclusions of law.

### I. FINDINGS OF FACT

On March 27, 1992, the Plaintiff, Tyler Caccamo ("Tyler"), a minor, by and through his parents and legal guardians, Anthony Caccamo and Sheila Caccamo, filed a medical malpractice action against Dr. Pouliot in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, Case No.: 92–08402(04) (the "State Court Action"). In the State Court Action, the Plaintiffs sought damages based on Dr. Pouliot's alleged medical negligence during Sheila Caccamo's delivery of Tyler on May 15, 1990, which resulted in the fracturing of Tyler's skull and neurological damage.

On July 7, 1995, Dr. Pouliot filed a Consent to Judgment for ten million dollars ($10,000,000.00) in the State Court Action. On July 18, 1995, Circuit Court Judge Patricia W. Cocalis accepted Dr. Pouliot's Consent to Judgment and entered a final judgment in favor of the Plaintiffs in the sum $10,000,000.00 (the "Debt"), which has not been appealed.

Dr. Pouliot is a medical doctor who is licensed to practice medicine in the State of Florida and specializes in the fields of obstetrics and gynecology. Dr. Pouliot has hospital privileges at Holy Cross Hospital and Broward General Medical Center located in Broward County, Florida. At all times pertaining hereto, Dr. Pouliot held himself out as a physician licensed by the State of Florida and displayed on the wall of his office a certificate which disclosed that he was licensed by the State of Florida to practice medicine. As a licensed physician in the State of Florida, Dr. Pouliot is subject to the laws of the State of Florida regulating the practice of medicine by licensed physicians, including, but not limited to, Chapter 458 of the Florida Statutes entitled "Medical Practice."

Florida Statute § 458.320 (1991), entitled "Financial Responsibility" (the "Financial Responsibility Act"), which was in effect on the date of Tyler's injury states the requirements of financial responsibility for a medical physician practicing in the State of Florida, as well as the exceptions thereto. As a condition for licensure, during the years of 1987 through 1989 and 1989 through 1991, Dr. Pouliot filled out and signed a form entitled "Completion of all Sections of this Form is Mandatory for Renewal of Your License" (the "Renewal Form"), as required by the Department of Business and Professional Regulation (the "DBPR"). The Re-

newal Form included the following statement:

> I have elected not to carry medical malpractice insurance or otherwise demonstrate financial responsibility; however, I agree to satisfy any adverse judgments up to the minimum amounts pursuant to Section 458.320(5)(g)(1), Florida Statute. I understand that I must post notice in the form of a sign prominently displayed in the reception area or provide a written statement to any person to whom medical services are being provided that I have decided not to carry medical malpractice insurance or otherwise demonstrate financial responsibility. I understand that such a sign or notice must contain the wording specified in Section 458.320(5)(g), Florida Statutes.

Consistent with the requirements set forth in the Renewal Form and in Fla.Stat. § 458.320, Dr. Pouliot hung a sign on the wall of the reception area of his office (the "Sign"), which stated the mandatory language of Fla.Stat. § 458.320(5)(g)(4).[1] It is undisputed that Sheila Caccamo saw and read the Sign during her medical visits with Dr. Pouliot, but at no time saw the Renewal Form prior to May 15, 1990.

On November 25, 1992, Dr. Pouliot filed his voluntary petition for bankruptcy relief under Chapter 7 of the Bankruptcy Code (the "Code"). On August 3, 1995, the Plaintiffs filed the Adversary Complaint to Determine Dischargeability of Debt (the "Complaint") seeking this Court's determination that the Debt is excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(B), 523(a)(4) and 523(a)(6).

In Dr. Pouliot's bankruptcy schedules and statements, the Plaintiffs' claim is listed as unsecured and unliquidated in the sum of three million dollars ($3,000,000.00). The

Plaintiffs have each filed a proof of claim in the amount of $10,000,000.00, as unsecured creditors.

As of the date of the filing of the Complaint, Dr. Pouliot has not paid the Plaintiffs any portion of the Debt. Pursuant to the Joint Stipulation, at all times pertaining hereto and at the time of Dr. Pouliot's treatment of Sheila and Tyler Caccamo, Dr. Pouliot used money and other assets earned by him to pay mortgage obligations for the Lyse Cloutier Revocable Trust, the assets of which are presently available for his and his family's use. Specifically, Dr. Pouliot has obligated himself to the repayment of certain mortgage indebtedness for the purchase of various pieces of improved real property (the "Properties") that are not homestead properties by placing the title to the Properties in a trust entitled "The Lyse Cloutier Pouliot Revocable Trust." It is undisputed that the Properties are not subject to levy by Dr. Pouliot's creditors.

## II. CONCLUSIONS OF LAW

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334, 1411(a), and 11 U.S.C. § 523. This is a core proceeding whereby this Court is authorized to hear and determine all matters regarding this case in accordance with under 28 U.S.C. § 157(b)(2)(I).

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. *Gui L.P. Govaert, Trustee, et al. v. Southern Nat'l Bank of North Carolina and Anthony S. Caserta, Debtor (In re Caserta)*, 182 B.R. 599, 603–605 (Bankr.S.D.Fla.1995). Rule

---

1. Florida Statute § 458.320(5)(g)(4) states in pertinent part:

   A licensee who meets the requirements of this paragraph shall be required to either post notice in the form of a sign prominently displayed in the reception area and clearly noticeable by all patients or provide a written statement to any person to whom medical services are being provided. Such sign or statement shall state that: **Under Florida law, physicians are generally required to carry medical** malpractice insurance or otherwise demonstrate financial responsibility to cover potential claims for medical malpractice. **YOUR DOCTOR HAS DECIDED NOT TO CARRY MEDICAL MALPRACTICE INSURANCE.** This is permitted under Florida law subject to certain conditions. Florida law imposes penalties against noninsured physicians who fail to satisfy adverse judgments arising from claims of medical malpractice. This notice is provided pursuant to Florida law.

56(c) of the Federal Rules of Civil Procedure states that summary judgment shall be entered only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56; *Clemons v. Dougherty Co., Georgia*, 684 F.2d 1365, 1368 (11th Cir.1982) citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

A fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). There is no genuine issue for trial if the record, taken as a whole, does not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ It is well established that a plaintiff in a dischargeability action must establish the elements of his or her case by a preponderance of the evidence. *Sheryl Corsi and David Corsi, her husband v. Paul K. Berman, Dr. (In re Berman)*, 154 B.R. 991, 1000–1001 (Bankr.S.D.Fla.1993) citing *Grogan v. Garner*, 498 U.S. 279, 285, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). Furthermore, exceptions to the operation of a discharge in bankruptcy pursuant to 11 U.S.C. § 523 should be narrowly construed. *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir.1986).

The issue before this Court is whether Dr. Pouliot's Motion should be granted regarding the nondischargeability of the Debt pursuant to 11 U.S.C. §§ 523(a)(2)(B), 523(a)(4), and 523(a)(6), as a matter of law. Having reviewed all the relevant pleadings, this Court finds that there are no genuine issues of material fact pertinent or relevant to Dr. Pouliot's Motion or related pleadings regarding nondischargeability of the Debt pursuant to 11 U.S.C. §§ 523(a)(2)(B) and 523(a)(4) and that summary judgment as to these two grounds must be granted in favor of Dr. Pouliot as a matter of law. However, this Court also finds that genuine issues of material fact exist as to the nondischargeability of the Debt pursuant to 11 U.S.C. § 523(a)(6) and that summary judgment as to this ground must be granted in part and denied in part as a matter of law.

## A. THE RECORD IS INSUFFICIENT TO ESTABLISH AN EXCEPTION TO DISCHARGE PURSUANT TO 11 U.S.C. 523(a)(2)(A)

Title 11 U.S.C. 523(a)(2)(A) provides in relevant part:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A).

■ In order for a creditor to be awarded an exception from discharge pursuant to 11 U.S.C. § 523(a)(2)(A), a creditor must prove each statutorily enumerated element contained therein. According to the plain language of 11 U.S.C. § 523(a)(2)(A), a creditor must establish a false or fraudulent representation by the debtor, *other than a statement respecting his or an insider's financial condition.*

■ In the Complaint, the Plaintiffs seek an exception to discharge pursuant to 11 U.S.C. §§ 523(a)(2)(B), 523(a)(4) and 523(a)(6). However, in Dr. Pouliot's Motion, the Response and the Reply, the parties set forth the law regarding dischargeability of the Debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6). Having reviewed the record, this Court finds that although Plaintiffs set forth general allegations regarding Dr. Pouliot's alleged false and fraudulent representations, such allegations only relate to Dr. Pouliot's present and past financial condition. There is nothing in the record which would substantiate false or fraudulent representations by Dr. Pouliot relating to something other than his financial condition. Even if the Complaint was based on 11 U.S.C. § 523(a)(2)(A), this Court finds

that the record is insufficient to establish an exception to discharge under 11 U.S.C. § 523(a)(2)(A). Therefore, to the extent the Reply requests this Court to grant Dr. Pouliot a discharge pursuant to 11 U.S.C. § 523(a)(2)(A), the request is granted.

## B. *DR. POULIOT'S MOTION REGARDING 11 U.S.C. § 532(a)(2)(B) IS GRANTED*

Title 11 U.S.C. § 523(a)(2)(B) provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B).

█ Dr. Pouliot asserts that 11 U.S.C. § 523(a)(2)(B) only applies to debts for money, property or services and does not serve as a basis for the non-dischargeability of a debt incurred through a personal injury claim. Dr. Pouliot states that the Plaintiffs have not established 11 U.S.C. § 523(a)(2)(B)'s statutory elements of "reliance" and "false representation." Dr. Pouliot also asserts that even if the Plaintiffs did rely on some alleged promise made by him through his compliance with Fla.Stat. Ch. 458, 11 U.S.C. § 523(a)(2)(B) is not available as a remedy for false promises or promises evidencing a future intent to fulfill an obligation.

The Plaintiffs claim that Dr. Pouliot's alleged misrepresentation and fraud relate to the injuries incurred from his negligent services and to payments he agreed to make in the event of medical malpractice liability. The Plaintiffs assert that Dr. Pouliot's "mate-

rially false" promise to pay a medical malpractice claim is evidenced through his signing of the Renewal Form and hanging of the Sign in the reception area of his office, as required by the DBPR and Fla.Stat. Ch. 458.320, respectively. The Plaintiffs contend that such promise was present since, at the time of Dr. Pouliot's compliance with the DBPR's and Fla.Stat. § 458.320's requirements and treatment of Sheila Caccamo, he had already taken steps to place his assets beyond the reach of prospective injured patients. The Plaintiffs contend, generally, that Dr. Pouliot, intending to deceive the Plaintiffs, published a materially false statement in writing respecting his financial condition upon which they reasonably relied and that such conduct constitutes fraud pursuant to 11 U.S.C. § 523(a)(2)(B).

As set forth, *supra*, 11 U.S.C. § 523(a)(2)(B) excepts from discharge: "any debt ... (2) for money, property, services ... to the extent **obtained by** ... (B) use of a statement in writing ..." (emphasis added). Although the language of subsection (2) of 11 U.S.C. § 523(a) appears to require that a *debtor* have obtained a debt for money, property, or services through the use of a statement in writing, the Eleventh Circuit Court of Appeals in *Louis S. St. Laurent, II v. William J. Ambrose, et al. (In re St. Laurent, II)*, 991 F.2d 672, 678–679 (11th Cir.1993) held that the term "debt" is to be given an expansive reading for purposes of the Code.

█ According to the Eleventh Circuit, pursuant to 11 U.S.C. § 101(12), the term "debt" is defined as liability on a claim and, therefore, the terms "debt" and "claim" are coextensive. *In re St. Laurent, II*, 991 at 679 *citing Johnson v. Home State Bank*, 501 U.S. 78, 85 n. 5, 111 S.Ct. 2150, 2154 n. 5, 115 L.Ed.2d 66 (1991). In addition, the Eleventh Circuit held that pursuant to 11 U.S.C. § 101(5)(A) the term "claim" is defined as "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Citing to the United States Su-

preme Court in *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990), the Eleventh Circuit held that a right to payment "is nothing more or less than an enforceable obligation, regardless of the objectives ... to [be] serve[d] in imposing the obligation." *In re St. Laurent, II*, 991 F.2d at 678.

In holding that the terms "debt" and "claim" are to be given a broad and expansive reading for purposes of the Bankruptcy Code, the Eleventh Circuit addressed the legislative history of the Code, holdings by the United States Supreme Court, and precedent set by the Eleventh Circuit. Citing to various congressional reports, the Eleventh Circuit held that " 'claim' was to be given the 'broadest possible definition.' " *Id. See* H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. 309 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6266; S.Rep. No. 95–989, 95th Cong., 2nd Sess. 22 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5808. Citing to the United States Supreme Court in *Davenport*, 495 U.S. at 558, 110 S.Ct. at 2130, the Eleventh Circuit stated:

> Congress chose expansive language in both definitions [of "claim" and "debt"] ... For example, to the extent the phrase "right to payment" is modified in the statute, the modifying language ("whether or not such right is ...") reflects Congress' broad rather than restrictive view of the class of obligations that qualify as a "claim" giving rise to a "debt."

*In re St. Laurent, II*, 991 F.2d at 678. In addition, citing to *TranSouth Fin. Corp. v. Johnson*, 931 F.2d 1505, 1507 (11th Cir.1990), the Eleventh Circuit held that "if a creditor is able to establish the requisite elements of Section 523, the creditor is entitled to collect the 'whole of any debt' he is owed by the debtor." *In re St. Laurent, II*, 991 F.2d at 679.

Applying the foregoing analysis to the interpretation of § 523(a)(2), the Eleventh Circuit held that "the language 'to the extent obtained by' is not conclusive proof that Con-

gress sought to prune the breadth of the definition of 'debt.' " *Id.* Stating that "Congress' expansive definition of 'debt' applies to each subsection of § 523(a), absent clear intent to the contrary," and giving the broadest possible definition to the term "debt," the Eleventh Circuit held that 11 U.S.C. § 523(a)(2)(A) "encompasses an award for punitive damages arising from the same conduct as necessitated an award of compensatory damages, notwithstanding the 1984 amendment to § 523(a)(2)(A)." [2] *Id.* at 680.

Applying the holding of the Eleventh Circuit in *In re St. Laurent, II*, this Court finds that the broad language of 11 U.S.C. § 523(a)(2) concerning money, property, services and credit obtained by a debtor includes personal injury claims such as the Debt. However, although this Court finds that the language of 11 U.S.C. § 523(a)(2) encompasses the Debt, this Court also finds that Dr. Pouliot did not publish a "materially false statement" upon the posting of the Sign nor did the Plaintiffs "reasonably rely" on the Renewal Form pursuant to 11 U.S.C. § 523(a)(2)(B).

█ As discussed, *supra*, under 11 U.S.C. § 523(a)(2)(B), a debt is non-dischargeable in bankruptcy where it was obtained by a writing: (1) that is materially false; (2) respecting the debtor's or an insider's financial condition; (3) on which the creditor to whom the debt is liable for such money, property, services, or credit reasonably relied; and (4) that the debtor caused to be made or published with the intent to deceive. 11 U.S.C. § 523(a)(2)(B). The objecting creditor has the burden of proving these elements by a preponderance of the evidence. *Equitable Bank v. Arthur R. Miller and Janet E. Miller*, 39 F.3d 301, 304 (11th Cir.1994) *citing Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). If any one of these elements is not met, the debt is dischargeable. *Equitable*, 39 F.3d at 304.

█ Based on a review of the record in a light most favorable to the Plaintiffs, this

---

**2.** Although the Eleventh Circuit in *In re St. Laurent, II*, addressed the terms "claim" and "debt" in the context of 11 U.S.C. § 523(a)(2)(A), this Court finds that such analysis is also applicable to 11 U.S.C. § 523(a)(2)(B) since 11 U.S.C. § 523(a)(2) applies to both subsections (A) and (B), respectively.

Court finds that no genuine issue of material fact relevant to the first and third elements of 11 U.S.C. § 523(a)(2)(B) are in dispute. The Plaintiffs assert that although Dr. Pouliot hung the Sign stating that he was required to "demonstrate financial responsibility to cover potential claims," he nonetheless removed his assets beyond the reach of the Plaintiffs, which are not available to satisfy the Debt. As to the first element of 11 U.S.C. § 523(a)(2)(B), this Court finds that the Sign does not constitute a materially false statement. The statutory language set forth in the Sign is limited in that a non-insured physician must simply, in lieu of carrying medical malpractice insurance, "demonstrate financial responsibility." The Sign does not state that Dr. Pouliot will satisfy all adverse judgments. The Sign only provides that Dr. Pouliot will either satisfy an adverse judgment against him **or** be subject to penalties pursuant to Florida law. Florida Statute §§ 458.320(4)(b) and 458.331 set forth the penalties instituted by the DBPR and the Board for a physician's failure to comply with the Financial Responsibility Act.[3] The Plaintiffs also claim that since Dr. Pouliot signed the Renewal Form stating that he agrees to satisfy any adverse judgments up to the minimum amounts pursuant to Fla.Stat. § 458.320(5)(g)(1), the Renewal Form constitutes a materially false statement upon which they reasonably relied pursuant to 11 U.S.C. § 523(a)(2)(B). It is undisputed that Sheila Caccamo never saw the Renewal Form. As set forth in the Caccamo Deposition, Sheila Caccamo testified that the only communication she had with Dr. Pouliot concerning his financial responsibility was the Sign posted in his office.

As stated by the United States Supreme Court in *William Field and Norinne Field v. Philip W. Mans*, — U.S. —, —, 116 S.Ct. 437, 442, 133 L.Ed.2d 351 (1995) "[s]ection 523(a)(2)(B) expressly requires not only reasonable reliance but also reliance itself; and not only a representation but also one that is material; and not only one that is material but also one that is meant to deceive." This Court, therefore, finds that since the Plaintiffs did not read nor discuss with Dr. Pouliot the statements contained in the Renewal Form, the Plaintiffs did not reasonably rely nor actually rely on the Renewal Form.

---

3. Florida Statute Chapter § 458.320(4)(b) provides:

If financial responsibility requirements are met by maintaining an escrow account or letter of credit as provided in this section, upon the entry of an adverse final judgment arising from a medical malpractice arbitration award, from a claim of medical malpractice either in contract or tort, or from non-compliance with the terms of a settlement agreement arising from a claim of medical malpractice either in contract or tort, the licensee shall pay the entire amount of the judgment together with all accrued interest, or the amount maintained in the escrow account or provided in the letter of credit as requires by this section, whichever is less, within sixty days after the date such judgment became final and subject to execution, unless otherwise mutually agreed to in writing by the parties. *If timely payment is not made by the physician, the department shall suspend the license of the physician pursuant to procedures set forth in subparagraphs (5)(g)2., 3., and 4 [of Fla.Stat. 458.320]. Nothing in this paragraph shall abrogate a judgment debtor's obligation to satisfy the entire amount of the judgment* (emphasis added).

Florida Statute § 458.331 provides:

(1) The following acts shall constitute grounds for which the *disciplinary actions* specified in subsection (2) may be taken:

(a) Attempting to obtain, obtaining, or renewing a license to practice medicine by bribery, by fraudulent misrepresentations, or through an error of the department or the board ...

\* \* \* \* \* \*

(g) Failing to perform any statutory or legal obligation placed upon a licensed physician.

\* \* \* \* \* \*

(x) Violating any provision of this chapter, a rule of the board or department, or a lawful order of the board or department previously entered in a disciplinary hearing or failing to comply with a lawfully issued subpoena of the department.

(2) When the board finds any person guilty of any of the grounds set forth in subsection (1) ... it may enter an order imposing one or more of the following penalties:

(a) Refusal to certify, or certification with restrictions, to the department an application for licensure, certification or registration.

(b) Revocation or suspension of license.

(c) Restriction of practice.

(d) Imposition of an administrative fine not to exceed $5,000 for each count or separate offense.

(e) Issuance of a reprimand.

\* \* \* \* \* \*

This Court also finds that even if Dr. Pouliot transferred his assets with the intent of putting them beyond the reach of Plaintiffs, there is no evidence that Dr. Pouliot made any written statements to Ms. Caccamo regarding his assets or financial ability to satisfy any adverse judgment against him. Based on the foregoing, this Court finds that the Debt is not excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(B) and that summary judgment must be granted in favor of Dr. Pouliot as a matter of law.

## C.  DR. POULIOT'S MOTION REGARDING 11 U.S.C. § 523(a)(4) IS GRANTED

Title 11 U.S.C. § 523(a)(4) provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4).

Dr. Pouliot asserts that an uninsured physician does not have a fiduciary responsibility to his patient and that any broad definition of "fiduciary" is inapplicable in the dischargeability context. Dr. Pouliot also states that the "fiduciary duty" set forth in 11 U.S.C. § 523(a)(4) only applies to those persons who control a fund of monies or equivalent in which a creditor holds a vested interest.

The Plaintiffs assert, however, that Florida law provides for a "fiduciary relationship" between a physician and a patient and that pursuant to such relationship, a physician must advise the patient as to the true facts known to him, and to not conceal any known facts. See Schafer v. Lehrer, 476 So.2d 781 (Fla. 4th DCA 1985); Tetstone v. Adams, 373 So.2d 362 (Fla. 1st DCA 1979); and Brooks v. Cerrato, 355 So.2d 119 (Fla. 4th DCA 1978). Specifically, the Plaintiffs assert that Sheila Caccamo placed her and her baby's life in the hands of Dr. Pouliot with full trust that she could rely on his medical expertise, as well as, the Sign evidencing his election to be personally responsible for any resulting injuries. The Plaintiffs claim, therefore, that since Dr. Pouliot breached his fiduciary obligations to the Plaintiffs, any debt incurred by Dr. Pouliot resulting from such breach should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(4).

Florida Courts cited, supra, have held that the fiduciary, confidential relationship of physician-patient imposes on the physician a duty to disclose known facts and that such non-disclosure may toll the statute of limitations under Florida law. However, this Court finds that such a relationship, alone, does not establish "fiduciary capacity" for the purposes of dischargeability under 11 U.S.C. § 523(a)(4). According to the Eleventh Circuit Court of Appeals in Alan S. Quaif v. Jeffrey Johnson, et al., 4 F.3d 950, 953 (11th Cir.1993):

The language of § 523(a)(4) is similar, but not identical, to provisions of the various bankruptcy statutes in effect since 1841. Although the wording has changed slightly, all of the versions have referred to ... "fiduciary capacity" or "fiduciary character." The Supreme Court has consistently held that the term "fiduciary" is not to be construed expansively, but instead in intended to refer to "technical" trusts. See Chapman v. Forsyth, 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844); Upshur v. Briscoe, 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1891); Davis v. Aetna Acceptance Co., 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934).[4]

Furthermore, the United States Supreme Court in Davis, 293 U.S. at 333, 55 S.Ct. at 153–154 in addressing the requirement of "fiduciary capacity",[5] held that:

4. The Eleventh Circuit in Quaif discusses in detail the concept of a "technical trust" and its relation to fiduciary obligations under 11 U.S.C. § 523(a)(4). Specifically, in Quaif, a technical trust was created by operation of law with fiduciary duties to account for and remit payments of funds to an insured. The instant case, unlike Quaif, involves a physician-patient relationship and does not concern the creation of a technical trust with fiduciary duties relating to the Plaintiffs' claim.

5. At the time the United States Supreme Court decided the Davis case, Bankruptcy Act § 17(a)(4) formerly codified at 11 U.S.C.A. § 35(a)(4) (West 1976) (Repealed) was in effect.

[T]he statute speaks of technical trusts, and not those which the law implies from contract. The scope of the exception was to be limited accordingly ... It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto.

*See Ted Fox v. Jan V. Karlin (In re Karlin),* 940 F.2d 1534 (9th Cir.1991) (for purposes of 11 U.S.C. § 523(a)(4), statutorily created trusts are permitted but constructive or implied trusts are beyond its reach).

■ Pursuant to the United States Supreme Court's holding in *Davis* as applied by the Eleventh Circuit in *Quaif,* the term "fiduciary capacity" under 11 U.S.C. § 523(a)(4) and its predecessors narrowly refers to a "technical" trust. Consistent with the holdings in *Davis* and *Quaif,* this Court finds that the relationship between a physician and his patient does not create a "technical trust" which establishes a "fiduciary capacity" under 11 U.S.C. § 523(a)(4). This Court, therefore, finds that the Debt is not excepted from discharge pursuant to 11 U.S.C. § 523(a)(4) and that summary judgment must be granted in favor of Dr. Pouliot as a matter of law.

## D. *DR. POULIOT'S MOTION REGARDING 11 U.S.C. § 523(a)(6) IS GRANTED IN PART AND DENIED IN PART*

Title 11 U.S.C. § 523(a)(6) provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(6) for wilful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

■ The Plaintiffs assert that they have been irreparably, wilfully and maliciously injured because Dr. Pouliot's premature forceps delivery of Tyler constituted a gross deviation of the accepted standards of obstetrical care. The Plaintiffs contend that Dr. Pouliot performed medical services on Sheila and Tyler Caccamo resulting in the premature forceps delivery of Tyler and the fracturing of Tyler's skull and neurological damage.

Specifically, the Plaintiffs allege that (1) Dr. Pouliot induced labor that was not only unnecessary but was not supported by any of the tests done on Sheila Caccamo, (2) Dr. Pouliot unnecessarily ruptured his patients membrane, (3) Dr. Pouliot failed to do internal monitoring of the baby, (4) Dr. Pouliot failed to do a scalp ph, (5) Dr. Pouliot failed to perform a C-section, and, finally, (6) Dr. Pouliot used incorrect forceps and applied such forceps incorrectly. Plaintiffs also contend, generally, that Dr. Pouliot willfully violated the Financial Responsibility Act and wilfully injured Tyler. In addition, in the Gatewood Deposition, Dr. Gatewood testified that "as a direct result of [Dr. Pouliot's] decision [to induce labor], the subsequent events that occurred resulted in this, and had that decision not been made, those events would not have occurred in all probability." Dr. Gatewood also testified that "I think it [became] rather eminent that we could have a problem here because of the inexperience or the inability of [Dr. Pouliot] to safely use forceps."

Dr. Pouliot asserts that his alleged act of medical malpractice does not constitute "wilful" and "malicious" injury under 11 U.S.C. § 523(a)(6). Dr. Pouliot contends that he has had a long career as an obstetrician delivering thousands of babies and his privileges to do forceps deliveries have been repeatedly renewed by Holy Cross Hospital and Broward General Hospital. Dr. Pouliot contends that even though his preliminary conduct, such as inducing Sheila Caccamo's labor at 35 to 36 weeks, was intentional, the resulting injuries to Tyler were not. Dr. Pouliot asserts that the injury was caused by the mishandling of Tyler's skull with the forceps, which was an unpredictable event.

As the predecessor to 11 U.S.C. § 523(a)(4), § 17(a)(4) read in pertinent part: "A discharge in bankruptcy shall release a bankrupt from all his provable debts, whether allowable in full or in part, except as such ... were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity."

■ According to the Eleventh Circuit, the term "wilful" in 11 U.S.C. § 523(a)(6) has been interpreted to require a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another. *Frank B. Hope v. Keith Walker (In re Walker)*, 48 F.3d 1161, 1163–1164 (11th Cir.1995) *citing Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 991 (11th Cir.1989) and *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1263 (11th Cir.1988). Furthermore, in 'defining what constitutes a "wilful" act, the Eleventh Circuit held that 11 U.S.C. § 523(a)(6) requires a deliberate or intentional injury. *In re Walker*, 48 F.3d at 1165. According to the Eleventh Circuit, "a debtor is responsible for a 'wilful' injury when he or she commits an intentional act **the purpose of which is to cause injury or which is substantially certain to cause injury**" (emphasis added). *Id.*

■ The Eleventh Circuit has also held that the term "malicious" in 11 U.S.C. § 523(a)(6) means wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill will. *In re Walker*, 48 F.3d at 1164 *citing In re Ikner*, 883 F.2d at 991. Furthermore, malice may be implied or constructive; a showing of specific intent to harm another is not required. *In re Walker*, 48 F.3d at 1164.

Furthermore, bankruptcy courts in the Eleventh Circuit have applied the foregoing analysis regarding 11 U.S.C. § 523(a)(6) to alleged medical malpractice claims. In *Carolyn E. Smith v. Michael Assevero, M.D. (In re Assevero)*, 185 B.R. 951, 953 (Bankr. N.D.Ga.1995), the Plaintiff contended that the Debtor–Physician's ("Assevero") negligent actions in performing certain surgery injuring her left kidney, failing to recognize such injury through a post-operative test, and performing additional, unnecessary surgery ultimately led to the removal of her left kidney. The Plaintiff argued that Assevero's claim was non-dischargeable under 11 U.S.C. § 523(a)(6) since he intended to perform certain acts, which necessarily led to her injury. *Id.* The United States Bankruptcy Court for the Northern District of Georgia in *In re Assevero* held:

[E]ven if a debtor intentionally performed or neglected to perform the acts in question such that he breached his professional duty of care duty of care by disregarding an unreasonable risk which led to Plaintiff's injury, a "willful and malicious injury" has not been established unless it is shown that he intended to cause [the] injury, or knew that such injury was substantially certain to result from his conduct.

*Id.* at 955.

This Court notes that both parties address the holdings of the Bankruptcy Court for the Southern District of Florida in *Sheryl Corsi and David Corsi v. Paul K. Berman, Dr. (In re Berman)*, 154 B.R. 991 (Bankr.S.D.Fla. 1993) and the Ninth Circuit in *Robert Britton v. Mary Price (In re Britton)*, 950 F.2d 602 (9th Cir.1991), which address the dischargeability of medical malpractice judgments pursuant to 11 U.S.C. § 523(a)(6). However, this Court finds that both cases are factually dissimilar to the instant case since both involve a debtor-physician's wilful misrepresentation of his medical experience and expertise, and subsequent injury to a misinformed patient.

■ This Court also notes that Judge Paskay in *Peggy Fernandez v. Jay A. McMahon (In re McMahon)*, 183 B.R. 948, 952–953 (Bankr.M.D.Fla.1995) (April 6, 1995) held the following:

[A] conduct of the debtor that falls below the prevailing professional standard of care coupled with a conduct which produced a *foreseeable injury* and evidenced a conscious disregard of the safety of the procedure undertaken by the debtor which ultimately caused the injury complained of is clearly sufficient to find that the Debtor's liability .. should be excepted .. pursuant to § 523(a)(6) (emphasis added).

However, on March 30, 1995, the Eleventh Circuit in *In re Walker*, 48 F.3d 1161 (11th Cir.1995) held that for an injury to be "wilful," the purpose of the intentional act must be to cause the injury or the injury must be substantially certain to result therefrom. Therefore, this Court finds that Judge Paskay's "foreseeable injury" standard is no longer the correct standard in light of the Eleventh Circuit's holding in *In re Walker*.

Plaintiffs generally allege that Dr. Pouliot's violation of the Financial Responsibility Act constitutes wilful and malicious injury pursuant to 11 U.S.C. § 523(a)(6). This Court has found, *supra*, that the Sign does not constitute a materially false statement. In addition, even if Dr. Pouliot transferred his assets with the intent of putting them beyond the reach of Plaintiffs, such acts do not constitute wilful and malicious injury to Plaintiffs or their property. Based on the foregoing, this Court finds that Dr. Pouliot's alleged violation of the Financial Responsibility Act does not constitute "wilful" or "malicious" injury pursuant to 11 U.S.C. § 523(a)(6). This Court, therefore, finds that Dr. Pouliot's Motion as to 11 U.S.C. § 523(a)(6) must be granted in part as a matter of law.

However, applying the holding of the Eleventh Circuit in *In re Walker* to the facts of this case and viewing the record in a light most favorable to the Plaintiffs, this Court finds that a genuine issue of material fact exists as to whether Dr. Pouliot acted "wilfully" and "maliciously" during Sheila Caccamo's pregnancy and subsequent delivery of Tyler for purposes of dischargeability under 11 U.S.C. § 523(a)(6). This Court finds that a genuine issue of fact remains as to whether Dr. Pouliot's alleged malpractice constituted a "wilful" injury to Tyler when he committed certain intentional acts the purpose which may have been substantially certain to cause Tyler's injuries. Based on the foregoing, this Court finds that Dr. Pouliot's Motion as to 11 U.S.C. § 523(a)(6) must be denied in part as a matter of law.

### E. *DR. POULIOT'S LIABILITY IS NOT LIMITED TO $250,000.00*

Dr. Pouliot claims that if his Debt is excepted from discharge pursuant to 11 U.S.C. § 523, this Court should limit his liability to $250,000.00. This Court finds that Fla.Stat. §§ 458.320 and 458.331 do not limit the liability of a non-insured physician to $250,000.00 but merely set forth the penalties for failure of a non-insured physician to comply with Florida law. In addition, Fla.Stat. § 458.320(4)(b) clearly states that "[n]othing in this paragraph shall abrogate a judgment debtor's obligation to satisfy the entire amount of the judgment." Therefore, this Court finds that the Debt shall not be limited to $250,000.00 if this Court determines that the Debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

Based on these findings of facts and conclusions of law, this Court hereby:

### ORDERS AND ADJUDGES that:

1. To the extent the Reply requests that this Court grant Dr. Pouliot a discharge under 11 U.S.C. § 523(a)(2)(A), such request is hereby granted.

2. Dr. Pouliot's Motion as to 11 U.S.C. §§ 523(a)(2)(B) and 523(a)(4) is hereby granted.

3. Dr. Pouliot's Motion as to 11 U.S.C. § 523(a)(6) is hereby granted in part and denied part.

4. The Debt shall not be limited to $250,000.00 if this Court determines that the Debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

5. A trial as to the dischargeability of the Debt pursuant to 11 U.S.C. § 523(a)(6) shall be set by this Court in a separate order.

6. Contemporaneous and on even date herewith, this Court enters a final judgment.

### DONE AND ORDERED.